J. N. McCAMMON, INCORPORATED, v. STEPHENS COUNTY.

No. 6450.   Decided February 5, 1936.
Rehearing overruled March 11, 1936.
(89 S. W., 2d Series, 984.)

*Goggans & Keith, Zellner Eldridge,* and *James E. Allison,* all of Dallas, for plaintiff in error.

The trial court correctly sustained plaintiff in error's motion to strike defendant in error's plea in abatement because it was filed without leave of the court and not in due order of pleading since an original and first amended answer were already on file and not sought to be withdrawn. Garner & Co. v. Riley, 238 S. W., 953; Duenkel v. Amarillo Bank & Tr. Co., 222 S. W., 670; 1 Tex. Jur., 157.

*Thos. B. Ridgell* and *Lyndsay D. Hawkins,* both of Breckenridge, for defendant in error.

Mr. Judge TAYLOR delivered the opinion of the Commission of Appeals, Section B.

J. N. McCammon, Inc., plaintiff in error, sued Stephens County for damages on account of breach of contract made with it for architectural services. Upon trial before the court with a jury, plaintiff recovered judgment for $18,800.00. The sole point upon which the case was reversed was that the trial court did not permit the county to withdraw its answers and present its plea in abatement for consideration. 54 S. W. (2d) 880. Writ was granted under the view that the trial court did not abuse its discretion in sustaining plaintiff's motion to strike out the plea in abatement.

The plea had been filed out of due order of pleading March 22, 1929, without leave of court, alleging forfeiture of plaintiff's charter by the Secretary of State prior to the filing of suit for failure of plaintiff to pay its franchise taxes. At the time the motion to strike the plea was filed defendant in error had on file an answer filed December 31, 1928, and amended answer filed February 11, 1929. It had on file also the plea in abatement in question and a second amended answer, both filed March 22, 1929, the former a few minutes earlier than the latter. Defendant opposed granting the motion to strike. The pertinent facts are recited in defendant's bill of exception, which with unnecessary recitations deleted, reads:

"When this case was called for trial on the morning of

March 27, 1929, the plaintiff announced that subject to the action of the court upon its motion to strike out certain portions of the answers contained in the deposition of E. F. Ritchey, it was ready for trial; the defendant announced to the court that it had a plea in abatement on file among the papers in the cause and asked to be heard upon said plea. * * * Attorneys for the plaintiff stated to the court that this was the first intimation either of them had that such plea had been filed and requested permission of the court to file, as of that date, a motion to strike out said plea in abatement. It was agreed * * *, and at the request of the attorneys for time to return to their offices for the purpose of looking up some authorities dealing with a motion to strike out the plea in abatement, the court thereupon announced a recess at about 9:30 until 11:00 A. M.

"At 11:00 A. M. the court was back on the bench and the attorneys for the plaintiff were present in court and in response to the question of the court, as to whether or not they were ready to proceed, announced that they were. After waiting about ten minutes after 11:00 for * * * the attorneys for the defendant to appear, the court had * * * (his) office called by telephone and was informed that he was not in his office, and thereupon a search was made to locate * * * (him) in the courthouse but he was not found. The court then announced that if * * * (he) was not present by 11:15 he would (the court having satisfied himself the motion to strike the plea in abatement was good) enter an order sustaining the motion to strike out the plea in abatement. At 11:15 the court did enter the order to strike out the plea in abatement and shortly thereafter * * * (defendant's attorney) came into the court room, and then for the first time suggested that he desired to file a motion asking permission to withdraw the answers previously filed herein by the defendant on December 31, 1928, and February 11, 1929, respectively, to which motion the plaintiff objected upon the ground that the plea in abatement had been filed without any permission of the court and while those answers were yet on file and that the court had already entered an order striking out defendant's plea in abatement.

"*Coming at that time,* (italics ours) the court refused defendant's request for permission to withdraw his answers previously filed on December 31, 1928, and February 11, 1929, * * * ."

We find no basis for holding that the trial court was prompted by "perversity of will, passion, partiality or moral delinquency" either in sustaining the motion to strike the plea

in abatement or in refusing to strike the answers designated in the motion. The court's action was not arbitrary, as defendant is not in position to say any absolute right to which it was entitled was violated by the court's action. The matter rested in the sound discretion of the court and no abuse of that discretion is shown. Lipscomb v. Perry, 100 Texas, 122, 96 S. W., 1069; Grayson v. Harrell, 202 S. W., 160.

The contract which plaintiff alleges was breached by defendant is set out in the minutes of the Commissioners' Court and stipulates for employment of plaintiff as an architect to prepare plans and specifications for a jail and courthouse improvements and to superintend its proper construction. Defendant alleged the invalidity of the contract. The principle questions presented by the allegations of invalidity, towit, that the contract was let without competitive bids and that it was ultra vires the plaintiff corporation, were certified by the Court of Civil Appeals. The Supreme Court answered both questions against defendant County's contentions. 122 Texas, 148, 52 S. W. (2d) 53.

After plaintiff's services were partially performed, and the personnel of the Commissioners' Court which made the contract had changed, the first contract was repudiated and another was made with another architect, and the building actually constructed was a combined courthouse and jail.

■ Defendant contends that the Commissioners' Court had no power to make a contract with plaintiff, extending beyond the term of the existing Court. The question had been settled contrary to defendant's contention. Gulf Bitulithic Co. v. Nueces County (Com. App.), 11 S. W. (2d) 305, holds that a contract such as is here in question is valid and that it cannot be repudiated on the sole ground that it was made by a preceding court.

■ Defendant also urged that the contingency relating to the nature of the building to be constructed renders the contract uninforcible. The stipulations of the contract called in question are:

"The owner and the architect agree that should the owner decide prior to the awarding of the contract on the jail building to build a combined jail and courthouse building, then and in that event this contract shall also include the architectural work thereon, and the architect will credit the owners with the cost of the jail plan on their charges for the combination building."

It is argued in this connection that a commissioners' court cannot bind a successor court to employ the same architect if at any time in the future the county decided to build a combination courthouse and jail. The facts show a repudiation by the subsequent court. Plaintiff was already employed under the terms of the original agreement. The effect of the quoted provisions of the contract was to protect plaintiff in his right to compensation already earned, as well as to provide a basis of computing his compensation in case of change in the type of the building to be erected. There is no statutory inhibition against such a provision, nor is it contrary to public policy when made in good faith. It concerns a present employment by the county of an architect to render the services contracted for. Whether they were to be utilized in the construction of a jail or a combined jail and courthouse, was left by the terms of the contract to the Commissioners' Court to determine prior to awarding the contract on the jail building. There was no error on the part of the trial court in holding the provision in question did not render the contract void. This provision became applicable in computing plaintiff's damages after his contract was repudiated and the subsequent court had proceded to erect a combined courthouse and jail. The jury made findings as to the cost of erecting the type of building provided for by the plans and specifications furnished by plaintiff, the cost of the building actually erected, and what it would have cost plaintiff to complete the performance of its contract. Upon these findings and the undisputed facts the court awarded and computed the judgment for damages.

■ Defendant questioned also the right of the Commissioners' Court to make the contract sued upon without making provision by way of tax levy for funds with which to make payment. This was unnecessary as there was on hand in the courthouse and jail fund at the time the contract was made the sum of $74,000, and up to the time of repudiation of the contract the county had on hand a sufficient amount to pay the architect's fees. Tackett v. Middleton (Com. App.), 280 S. W., 563, 44 A. L. R., 1143.

■ The defendant contends that the court erred in admitting in evidence plaintiff's claim against the county for the reason it was not shown that the claim was first presented to the county auditor for allowance or rejection. The evidence discloses that the account was presented to the auditor to be audited and was by him presented to the Commissioners' Court, because, as he

testified, questions of law were involved with which he was not familiar. The auditor testified also that he took part with the court in considering the matter. After the court repudiated the contract and refused payment, no further action was necessary as a predicate for filing suit, or receiving the contract in evidence. Greer v. Hunt County (Com. App.), 249 S. W., 831.

We have considered the other assignments presented by defendant in its brief in the Court of Civil Appeals and find no reversible error.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion adopted by the Supreme Court February 5, 1936.
Rehearing overruled March 11, 1936.